Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 50292 | **DATE** | 9/18/2003 |
| **CASE TITLE** | Konrardy vs. Cargill, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the court enters judgment in favor of defendants and against plaintiff on all claims, dismisses Unicare Life and Health Insurance Co. pursuant to stipulation, and dismisses this cause in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 18 2003 | 25 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 9-18-03 | |
| /LC | courtroom deputy's initials | 05 SEP 18 PM 2:45 FILED-WD Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| CRAIG A. KORNARDY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 02 C 50292 |
| | ) |
| CARGILL, INC., UNICARE LIFE | ) |
| AND HEALTH INSURANCE CO., | ) |
| and CARGILL INC. and ASSOCIATED | ) |
| COMPANIES LONG TERM | ) |
| DISABILITY PLAN. | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

### I. Introduction

Plaintiff, Craig Konrardy, filed a complaint against defendants, Cargill, Inc., Unicare Life and Health Insurance Co. (Unicare), and Cargill, Inc. and Associated Companies Long Term Disability Plan, alleging that defendants offset of social security benefits against disability payments under defendants' disability plan (the plan) constituted an unlawful denial of benefits under section 1132(a)(1)(B) of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), and that defendants' failure to provide a copy of the plan and other pertinent information as requested by plaintiff should result in defendants being penalized up to $100 per day under section 1132(C)(1) of ERISA. The parties have submitted a written stipulation to the dismissal of Unicare as a defendant, and the court, therefore, dismisses Unicare as a party.

The parties also stipulated to a trial based on the administrative record and have

submitted trial briefs in that regard. Plaintiff contends the following: (1) defendants wrongfully offset social security benefits that were based on his paraplegia when he was rendered disabled in 1993 within the meaning of the plan because of new and different medical conditions; (2) even if defendants properly offset social security benefits beginning in 1993, it was not permissible to increase the amount of the offset based on an increase in social security benefits in 1996 because the increase caused a change in his "personal status" which could not provide a basis for an increase of the offset; (3) defendants either waived, or are estopped from claiming, their right to increase the offset because they made no attempt to inquire about or recalculate his social security benefits between 1993 and 2001; (4) defendants should be estopped from increasing the offset more than three years after he qualified for a disability under the plan because there is a three-year limitations period that applies to a claimant when he initially seeks a disability; and (5) defendants failed to provide plaintiff with a copy of the applicable plan and other requested information within 30 days of his request and should be required to pay $100 per day for each day they were late.

For the following reasons, the court finds for defendants, enters judgment pursuant to Rule 52(c) in favor of defendants and against plaintiff on all claims in the complaint, and dismisses this cause in its entirety.

## II. Facts

The court finds the following relevant facts to be undisputed. Plaintiff was rendered a paraplegic due to a fall in 1981. He thereafter began receiving disability benefits from the Social Security Administration (SSA). In 1992, plaintiff was hired by Cargill as a computer programmer. In 1993, plaintiff sought and received disability benefits under the plan. As part of

the application process, plaintiff indicated that he received a disability benefit from SSA. As a result, and under the terms of the plan, defendants applied an offset to reduce his benefit under the plan in an amount equal to his social security benefit. This offset was stated on the disability check he received each month from defendants, and plaintiff never objected to the offset.

In 1996, plaintiff was notified by the SSA that his disability payment would be increased because of the increased payments to the SSA while he was employed at Cargill from 1992 to 1993. Also in 1996, plaintiff received a lump sum payment from the SSA for the years 1993-1996 in the amount of $25,050. Plaintiff did not, however, notify defendants of the increase in his social security benefit or the lump sum payment. Plaintiff continued to receive and accept a disability payment from defendants based on the original(and lesser) offset.

In late 2000, as part of a routine update of plaintiff's file, defendants became aware that plaintiff had been receiving a social security benefit greater than he had reported at the time he originally applied for a disability under the plan. At that time, defendants asked plaintiff to sign two social security forms which would allow defendants to ascertain the actual amount of social security benefits received by plaintiff. Rather than sign the forms, plaintiff had his attorney write defendants on February 8, 2001, questioning the calculation of plaintiff's benefit and asking for "all information utilized by your company and/or Cargill in determining the amount of benefits to be paid initially, and currently, to [plaintiff]." By way of response, on March 30, 2001, Unicare, the plan administrator, sent plaintiff a letter explaining that his benefits were to be suspended because of his failure to return the signed forms. Plaintiff eventually returned the signed forms to Unicare.

In early April of 2001, plaintiffs' counsel asked via telephone for a copy of the applicable

plan. Unicare faxed the then-current plan instead of the plan in effect at the time of plaintiff's original claim. On the next day, April 3, 2001, plaintiff's attorney sent Unicare a letter stating the wrong version of the plan had been faxed and requesting a correct copy of the plan as well as "any and all documents and information which were utilized to calculate [plaintiff's] long term disability benefits initially, and anything utilized since then to recalculate the benefits." On April 5, 2001, Unicare sent plaintiff a copy of the applicable plan as well as a written explanation of how the increased offset was determined.

After receiving updated information from the Social Security Administration, Unicare recalculated plaintiff's monthly social security benefit and the related offset. It further determined that based on the increased social security benefit paid in the past (applying a cost of living adjustment factor), plaintiff had been overpaid under the plan in the amount of $41,574.75. It further calculated plaintiff's new disability payment under the plan to be $280.95 after deducting the increased offset and the appropriate amount of federal tax. Defendants then began applying the $280.95 payment to reduce the $41,574.75 overpayment amount. On June 7, 2001, defendants informed plaintiff of this determination in writing.

Plaintiff appealed this determination on June 25, 2001, and Unicare, on August 23, 2001, confirmed its earlier decision. In a letter dated September 27, 2001, plaintiff for the first time raised the contention that no offset should be applied because the disability that qualified him under the plan was unrelated to the disability for which he received social security payments. Unicare rejected this assertion.

In a letter dated February 6, 2002, plaintiff argued for the first time that his disability under the plan was based on frontal lobe brain damage and had nothing to do with his spinal cord

injury. Unicare rejected this claim, noting that the frontal lobe damage was not documented until April 1997 and was only one of the conditions that led to the second finding of total disability.

The following facts are undisputed and relate to the history and nature of plaintiff's injuries and disabilities. In 1981, plaintiff suffered a fracture of the T-12 vertabrae and subsequent paraplegia when he fell from a tree. In 1993, while employed at Cargill, plaintiff suffered additional symptoms related to his spinal cord injury consisting of deep venous thrombosis in his legs, arthrodesis of both hips, and myositis ossificans which resulted in the bones of his pelvis essentially fusing together. These additional symptoms made it extremely difficult for plaintiff to sit which prevented him from performing the duties of his job at Cargill. Thus, plaintiff applied for and received disability payments under the plan.

In 1997, Unicare, the new third-party administrator for the plan, terminated plaintiff's benefits after determining plaintiff was not totally disabled. Plaintiff, in turn, submitted medical records and reports in support of his claim. These documents indicated the prior symptoms, including the deep venous thrombosis, hip arthrodesis, and ossification. Additionally, plaintiff, for the first time, submitted a report indicating he suffered frontal lobe damage in his brain. Plaintiff included a letter from Dr. Verduyn stating that plaintiff was disabled based on his T-12 paraplegia, the ossification in both hips, and the impairment of circulation in his legs. Dr. Verduyn's report further states that plaintiff is not only disabled "from his spinal cord injury but also from the brain damage."

### III. Discussion

The parties do not dispute that this court's review of defendants' determination regarding the applicability and the amount of the offset is governed by an arbitrary and capricious standard

where, as here, the plan gives the administrator the discretion to interpret terms and determine benefits. See Carr v. Gates Health Care Plan, 195 F. 3d 292, 294 (7th Cir. 1999). Under this standard, the administrator's decision will only be overturned if it is "downright unreasonable." Carr, 195 F. 3d at 294. If the administrator makes an informed judgment and articulates an explanation that is satisfactory in light of the relevant facts, then the decision is final and the reviewing court cannot decide whether it would reach the same conclusion or rely on the same authority. Carr, 195 F. 3d at 294.

The court begins its discussion by noting that there is no dispute that plaintiff is currently disabled under both social security and the plan. There is also no disagreement as to the actual amount of the benefit plaintiff currently receives from social security or under the plan. Rather, the dispute revolves around whether the offset applies at all and, to a lesser degree, when and in what amount it should apply.

The court reminds the parties that the entire focus regarding what benefits plaintiff receives under the plan begins and ends with the terms of the plan. In interpreting the plan, the court applies federal common law rules of contract interpretation. See Kamler v. H/N Telecommunications Serv., Inc., 305 F. 3d 672, 680 (7th Cir. 2002). These rules require the court to interpret terms of the plan in their ordinary and popular sense as would a person of average intelligence and experience. See Kamler, 305 F. 3d at 680. In interpreting the plan, the court's first task is to determine if the language is ambiguous. See Kamler, 305 F. 3d at 680. If not, the court will not look beyond the four corners of the plan in divining its meaning. See Kamler, 305 F. 3d at 680.

In this case, plaintiff's claims regarding the offset rise and fall on a provision of the plan

6

which defendants rely on in applying an offset based on plaintiff's social security benefits. Article V, § 5.2(c) of the plan allows for an offset for, among other things, "[a]ny periodic benefits for loss of earnings <u>on account of or by reason of the Participant's disability under the United States Social Security Act</u>...." (Emphasis added.) Under this provision, defendants are allowed to offset based on any payments received because of a disability under social security. Put another way, so long as plaintiff is considered disabled for purposes of social security for any reason, any payments received from social security can be offset under the plan.

Here, plaintiff, at the time of his first claim for disability under the plan, was considered disabled for purposes of social security. It is irrelevant what the basis of the disability was. It also does not matter that the basis for his receiving disability payments under the plan was different than the basis for his being considered disabled for purposes of social security. The plan language unambiguously provides that if plaintiff receives disability payments under social security then those payments are to be offset. This is so regardless of the nature of his disability under either social security or the plan. This makes perfect sense as it would not be unusual to have different standards or criteria for what constitutes a disability under social security and under the plan. The court finds nothing in the plan that requires the disability underlying the social security benefits to be coextensive with the disability under the plan before the social security benefits can be properly offset. Thus, the court finds the offset was properly applied beginning in 1993.

The same can be said for the new declaration of disability and award of benefits under the plan in 1997. Regardless of what criteria was used by Unicare to declare plaintiff eligible for disability payments under the plan, the fact remained plaintiff continued to be disabled for

7

purposes of receiving payments under social security. Because he received those payments "on account of" being disabled for purposes of social security, defendants were entitled to continue offset those benefits in 1997 and thereafter.

The court also can find no language in the plan that would prohibit defendants from increasing the offset to reflect any increases in social security benefits to plaintiff. Plaintiff raises several arguments in that regard, none of which are persuasive.

First, plaintiff contends that Article V, § 5.3 of the plan prohibits any increase in an offset if the increase in the offset benefit is "by reason of a change in the Participant's personal ... status such as, but not limited to, the attainment of a certain age." Plaintiff maintains that the changes that resulted in his increased social security benefits, his ability to work at Cargill and his subsequent inability to work there, constituted changes in his personal status. It is evident from the plain language of section 5.3, however, that what is meant by a change in personal status is something such as age that could result in an increase in social security benefits unrelated to his disability. Additionally, it is not reasonable to conclude that the basis for the change in personal status could include the reason why plaintiff received benefits under the plan in the first place (that is, working at Cargill then being unable to work at Cargill due to a disabling condition). It was clearly not arbitrary and capricious for the administrator to have interpreted section 5.3 in the manner it did.

Second, plaintiff argues that defendants waived any claim to a retroactive offset. To prove a valid waiver, plaintiff would have to show that defendants intentionally relinquished their known right to the increased offset. See Unisys Medical Plan v. Timm, 98 F. 3d 971, 974 (7th Cir. 1996). This flies in the face of the undisputed facts that defendants were unaware of the

8

increase until 2001 and, once becoming aware, took prompt action to increase the offset and to recoup the earlier offset retroactively. Further, plaintiff can point to no language in the plan that placed an affirmative duty on defendants to ascertain the status of his social security benefits earlier than they did.

Third, plaintiff asserts that defendants should be estopped from seeking a retroactive recoupment of the increased benefit. To establish an ERISA-estoppel, plaintiff must establish: (1) a knowing misrepresentation; (2) in writing; (3) with reasonable reliance by plaintiff; and (4) to plaintiff's detriment. See Kamler, 305 F. 3d at 679. Plaintiff here has shown none of these. There is nothing in the record to indicate defendants in any way submitted any written materials to plaintiff that were either misrepresentative regarding the offset or upon which plaintiff relied to his detriment.

Finally, as to the offset, plaintiff argues that defendants should be estopped from seeking an offset more than three years after he became disabled because a provision in the plan prohibits a participant from initially seeking benefits more than three years after becoming disabled. The court rejects this contention for two reasons. First, plaintiff cites to no authority for such a form of estoppel in the ERISA context. Second, the fact the plan provides a three-year limitations period for filing a disability claim has nothing to do with defendants seeking an offset once they become aware of its applicability.

Lastly, plaintiff seeks a $100 per day penalty from defendants for failing to submit the applicable plan and other related documents in a timely fashion. Section 1024(b)(4) of ERISA requires the administrator upon written request to furnish the plan and "other instruments under which the plan is established." An administrator has 30 days to honor such a request and is

subject to fines up to $100 for each day beyond 30 days that it fails to comply. 29 U.S.C. § 1132(C)(1). A request for documents under section1024(b)(4) necessitates a response when it provides clear notice of what information the participant desires. Anderson v. Flexel, Inc., 47 F. 3d 243, 278 (7th Cir. 1995). The request need not ask for specific documents by name, and an administrator cannot use such technical considerations as an excuse for failing to respond. Anderson, 47 F. 3d at 250. The purpose of the penalty provision in section1132(C)(1) is not so much to penalize as it is to induce the administrator to respond in a timely manner. Winchester v. Michael Reese Health Plan, Inc., 942 F. 2d 1190, 1193 (7th Cir. 1991). In determining whether to award a penalty for a violation of section 1024(b)(4), a court should consider the conduct and intent of the administrator in not providing the relevant information as well as the harm or prejudice suffered by the participant. Harsch v. Eisenberg, 956 F. 2d 651, 662 (7th Cir. 1992).

In the present case, the administrator was required to produce the relevant plan documents in a timely fashion. Plaintiff's written request asked for "all information utilized by your company and/or Cargill in determining the amount of benefits to be paid initially, and currently, to [plaintiff]." In apparent response, Unicare sent a letter to plaintiff on March 30, 2001, explaining that plaintiff's disability benefits had been suspended because of his failure to submit the signed authorization forms for social security. While this does not seem to the court an entirely logical response to plaintiff's February 8 request for information utilized in determining the amount of plaintiff's benefit, it also does not reflect intentional recalcitrance on the part of Unicare.

Once plaintiff clarified in a telephone conversation with Unicare on April 2, 2001, that he

10

wanted a copy of the applicable plan ( a request the court notes was not in writing), Unicare faxed a copy of the current plan to plaintiff. This was an incorrect version of the applicable plan as the correct one was the one in force at the time plaintiff made his original claim. In a letter dated April 3, 2001, plaintiff pointed out the error, and Unicare promptly sent a copy of the applicable plan on April 5, 2001. Again, while the administrator might be guilty of sloppy procedures, the mere fact of sending the wrong plan does not evidence intentional wrongdoing.

Further, the administrator also provided plaintiff with additional materials relevant to its decision making process, some of which plaintiff should have had independent access to. This further evidences the good faith efforts of the administrator in complying with plaintiff's request.

Plaintiff has also failed to demonstrate prejudice or harm from any purported violation of section 1024(b)(4). While the administrator may have been somewhat tardy in providing the correct version of the plan, there is no evidence that plaintiff was prejudiced by the delay. Under the totality of the circumstances, the court finds plaintiff is not entitled to any penalty under section 1132(C)(1).

## IV. Conclusion

For the foregoing reasons, the court finds that the administrator's determinations under the plan were not arbitrary and capricious. Therefore, the court enters judgment in favor of defendants and against plaintiff on all claims in plaintiff's complaint and dismisses this cause in its entirety.

*[signature]*　　　　　　　　　　　　　　　　　**SEP 18 2003**

Philip G. Reinhard, Judge　　　　　　　　　　　Date